UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | *CR 16-159 WMW/SER* |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | |
| v. | ) | 18 U.S.C. § 1341 |
| | ) | 18 U.S.C. § 1957 |
| RANDY SCOTT MILAND, | ) | |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

### Counts 1-5
(Mail Fraud)

1.      At times relevant to the indictment:

a.      Defendant RANDY SCOTT MILAND was a licensed chiropractor in the state of Minnesota.

b.      On or about March 11, 1999, the Minnesota Board of Chiropractic Examiners suspended defendant MILAND's chiropractic license after concluding he had engaged in unprofessional conduct and exploited chiropractic clients for financial gain.

c.      On or about April 7, 1999, defendant MILAND was convicted of theft by swindle in Washington County District Court. As part of his sentence, defendant MILAND was ordered to pay approximately $1,544,659 in restitution to his victims. As of May 2016, defendant MILAND still owed more than $1.5 million in restitution pursuant to this order.

1

SCANNED

JUN 0 7 2016

U.S. DISTRICT COURT ST. PAUL

d.     On or about June 7, 1999, the Minnesota Department of Commerce issued a Cease and Desist Order forbidding defendant MILAND from offering or selling securities in the state of Minnesota until further order of the Commissioner of the Minnesota Department of Commerce. This Cease and Desist Order remained in effect as of May 2016.

e.     On or about December 6, 2006, defendant MILAND was convicted of wire fraud in the United States District Court for the District of Minnesota. As part of his sentence, defendant MILAND was ordered to pay $256,479 in restitution to the victims of his fraud scheme. As of May 2016, defendant MILAND owed approximately $124,000 in restitution pursuant to this order.

f.     On or about December 1, 2011, the Minnesota Board of Chiropractic Examiners reinstated defendant MILAND's chiropractic license with several conditions, including that defendant MILAND "refrain from engaging in personal or business relationships with past or current patients and their immediately family members."

2.     Beginning no later than in or about 2010 and continuing at least until in or about 2014, in the State and District of Minnesota, the defendant,

**RANDY SCOTT MILAND,**

did knowingly devise and participate in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses,

representations, promises and material omissions, and by concealment of material facts.

3.     It was part of the scheme that defendant MILAND fraudulently solicited approximately $575,000 from investors by falsely representing he would use their money to invest in the futures market or other legitimate investments when, in fact, defendant intended to and did use the invested funds to pay personal expenses, make court-ordered restitution payments, and make Ponzi-type payments of promised returns to other investors.

4.     It was further part of the scheme that defendant MILAND concealed material facts from his investors, including: (a) that the Minnesota Board of Chiropractic Examiners suspended his chiropractic license in 1999 after concluding defendant MILAND had engaged in unprofessional conduct and exploited chiropractic clients for financial gain; (b) that defendant MILAND was convicted of theft by swindle in 1999 and that he still owed over $1.5 million in court-ordered restitution to the victims of that theft; (c) that in 1999 the Minnesota Department of Commerce issued a Cease and Desist Order forbidding defendant MILAND from offering or selling securities in the state of Minnesota; (d) that defendant MILAND was convicted of wire fraud in 2006 and still owed approximately $124,000 in court-ordered restitution to the victims of that fraud scheme; and (e) that the Minnesota Board of Chiropractic Examiners reinstated defendant MILAND's chiropractic license in 2011 on the condition that he "refrain from engaging in personal or

3

business relationships with past or current patients and their immediately family members."

5.     It was further part of the scheme that defendant MILAND failed to invest all of his investors' money, but instead used over $300,000 in investor funds to pay personal expenses, to make court-ordered restitution payments, and to make Ponzi-type payments of promised returns to other investors.

6.     It was further part of the scheme that defendant MILAND took steps to conceal his fraudulent activity and lull his investors into believing that their funds had been placed into legitimate investments, including by (a) using some of the diverted investor funds to make payments to investor-clients, which were intended to appear as interest and principal payments accruing from legitimate investments, and (b) creating fake statements purporting to document returns earned on his victims' investments.

7.     On or about the following dates, in the State and District of Minnesota and elsewhere, the defendant,

**RANDY SCOTT MILAND,**

having devised and intending to devise the scheme and artifice described above, caused to be sent, delivered, and moved by the United States Postal Service various mailings, items, and things for the purpose of executing and attempting to execute such scheme and artifice:

| Count | Date (on or about) | Mailing Details |
|-------|--------------------|-----------------|
| 1 | April 17, 2012 | An envelope containing a $24,739 check and a $3,131 check sent from Wells Fargo Bank in St. Paul, Minnesota, to Individual WG in Minneapolis, Minnesota, representing the proceeds of a stock sale by Individual WG in order to make an investment with defendant MILAND |
| 2 | July 12, 2012 | An envelope containing a $20,000 check sent from Thrivent Financial in Appleton, Wisconsin, to Individual RC in Perham, Minnesota, representing the proceeds of a mutual fund investment withdrawn by Individual RC in order to make an investment with defendant MILAND |
| 3 | August 1, 2012 | An envelope containing a $10,000 check sent from Thrivent Financial in Appleton, Wisconsin, to Individual RC in Perham, Minnesota, representing the proceeds of a mutual fund investment withdrawn by Individual RC in order to make an investment with defendant MILAND |
| 4 | April 26, 2013 | An envelope containing a $10,000 check sent from Thrivent Financial in Appleton, Wisconsin, to Individual RC in Perham, Minnesota, representing the proceeds of a mutual fund investment withdrawn by Individual RC in order to make an investment with defendant MILAND |
| 5 | May 6, 2013 | An envelope containing a $10,000 check sent from Thrivent Financial in Appleton, Wisconsin, to Individual RC in Perham, Minnesota, representing the proceeds of a mutual fund investment withdrawn by Individual RC in order to make an investment with defendant MILAND |

All in violation of Title 18, United States Code, Section 1341.

## Count 6
(Money Laundering)

8.      The allegations in paragraphs 1 through 6 of Counts 1 through 5 are incorporated herein.

9.     On or about May 13, 2013, in the State and District of Minnesota and elsewhere, the defendant,

**RANDY SCOTT MILAND,**

knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, namely the negotiation of a check obtained with funds from defendant MILAND's bank account in the amount of $23,500 to Individual MS as payment on a contract for deed for a property located at 8601 4th Avenue South in Bloomington, Minnesota, such property having been derived from a specified unlawful activity, that is, mail fraud in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1957.

### Forfeiture Allegations

10.     Counts 1 through 6 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

11.     As the result of the offenses alleged in Counts 1 through 5 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts 1 through 5 of the

6

Indictment, including a forfeiture money judgment in at least the amount of $575,036.

12.    As the result of the offense alleged in Count 6 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

13.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____            _____
UNITED STATES ATTORNEY                 FOREPERSON