UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

            Plaintiff,

   v.

Randy Scott Miland,

            Defendant.

Case No. 16-cr-0159 (WMW/SER)

**ORDER**

---

This matter is before the Court on Defendant Randy Scott Miland's pro se emergency motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 76.) Miland seeks compassionate release and requests that the Court reduce his prison sentence to home confinement because of the dangers posed by COVID-19. Plaintiff United States of America opposes Miland's motion. For the reasons addressed below, the Court denies Miland's motion.

## BACKGROUND

From 2010 through 2014, Miland devised and participated in a scheme to defraud investors of approximately $540,000 by falsely representing he would use their money to invest in the futures market or other legitimate investments. Miland held himself out to be a skilled investor and promised to invest their money in Top Flite Investments, LLC. Miland used the invested funds to pay personal expenses, make court-ordered restitution payments, and make Ponzi-type payments of promised returns to other investors.

Miland also concealed material facts from his investors, including: that the Minnesota Board of Chiropractic Examiners suspended his chiropractic license in 1999 after concluding that Miland engaged in unprofessional conduct and exploited chiropractic clients for financial gain; that he was convicted of theft by swindle in 1999 and that he still owed more than $1.5 million in court-ordered restitution to the victims of that theft; that in 1999 the Minnesota Department of Commerce issued a Cease and Desist Order forbidding him from offering or selling securities in the state of Minnesota; that he was convicted of wire fraud in 2006 and still owed approximately $124,000 in court-ordered restitution to the victims of that fraud scheme; and that the Minnesota Board of Chiropractic Examiners reinstated his chiropractic license in 2011 on the condition that he "refrain from engaging in personal or business relationships with past or current patients and their immediate family members."

Miland concealed his fraudulent activity and led investors to believe that their funds had been placed into legitimate investments by using some of the diverted investor funds to make payments to investor-clients, which were intended to appear as interest and principal payments accruing from legitimate investments, and by creating fake statements purporting to document returns earned on his victims' investments.

In June 2016, Miland was charged with five counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of money laundering, in violation of 18 U.S.C. § 1957. On September 9, 2016, Miland pleaded guilty to Count 1 and Count 6 of the Indictment, which allege mail fraud and money laundering, respectively.  On June 6, 2017, Miland was sentenced to 90 months' imprisonment followed by three years of supervised release.

At the time of sentencing, the Court considered information regarding Miland's health and medical history, including his coronary artery disease, degenerative joint disease, chronic kidney disease, multiple heart surgeries, and his family history of premature death from heart conditions. The Court considered these health conditions during sentencing but determined they did not warrant a variance under 18 U.S.C. § 3553(a).

Miland submitted a request for compassionate release to the Federal Bureau of Prisons (BOP) warden on December 18, 2019. The Warden reviewed the request and, as reflected in a January 21, 2020 letter, the Warden determined that Miland did not meet the minimum criteria for a compassionate release or reduction in sentence. On April 8, 2020, Miland moved this Court for a sentence reduction based on compassionate release pursuant to the First Step Act. In his motion, Miland asserts that his health conditions constitute extraordinary and compelling reasons that warrant early release from prison. In support of his motion, Miland refers to his history of hypertension, kidney disease, and cardiac disease. Miland currently is incarcerated at the Federal Prison Camp in Duluth, Minnesota (FPC Duluth), and is scheduled to be released on November 15, 2023.

## ANALYSIS

A "court may not modify a term of imprisonment once it has been imposed" except pursuant to specific statutory exceptions. 18 U.S.C. § 3582(c). The compassionate-release provision of the First Step Act is one such statutory exception. *See* 18 U.S.C. § 3582(c)(1)(A). Section 603(b) of the First Step Act amends 18 U.S.C. § 3582 and allows a defendant to petition a district court directly for compassionate

release. First Step Act of 2018 (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission enumerates several "extraordinary and compelling reasons" that may justify a reduction of sentence, including the medical condition of the defendant, the defendant's age, and the defendant's family circumstances. *U.S. Sentencing Guidelines Manual* (U.S.S.G.) § 1B1.13 cmt. 1(A)–(C) (U.S. Sentencing Comm'n 2018). Thus, a defendant's medical condition, in certain circumstances, may form the basis for a reduction in sentence under the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a terminal illness or (2) a serious physical or mental condition "that substantially diminishes the ability of the defendant to provide self-care" and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. 1(A). The policy statement also provides a catch-all provision, allowing district courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories." *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

The defendant has the burden to show that he or she is entitled to a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). Compassionate release based on a defendant's medical condition is rare. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188–89 (D.N.M. 2019) (collecting cases). District courts consider three factors when evaluating a compassionate-release motion: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a sentence reduction is consistent with the Sentencing Commission's policy statement, including whether the prisoner is a danger to the safety of any other person or to the community; and (3) whether the sentencing factors in Section 3553(a), to the extent they are applicable, weigh in favor of a sentence reduction. *United States v. Bellamy*, No. 15-165(8) (JRT/LIB), 2019 WL 3340699, at *2, *5 (D. Minn. July 25, 2019); U.S.S.G. § 1B1.13. The Court considers each factor in turn.

### I.      Exhaustion of Administrative Remedies

The Court must first consider whether Miland's motion is properly before the Court. A district court may reduce a defendant's sentence only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Bergren*, No. 00-cr-375 (DWF/RLE), 2020 WL 1910585, at *1–*2 (D. Minn. Apr. 20, 2020) (denying motion for compassionate release due to COVID-19 for failure to exhaust administrative remedies and on the merits); *United States v. Annis*, 16-195(1) (JRT/KMM), 2020 WL 1812421, at *2 (D.

Minn. Apr. 9, 2020) (concluding that the court lacked authority to grant compassionate release due to COVID-19 pursuant to 18 U.S.C. § 3582(c)(1)(A) because the defendant had not exhausted administrative remedies).

In this instance, Miland submitted a request for compassionate release to the BOP on December 18, 2019. But the BOP's determination that Miland did not meet the minimum criteria for a compassionate release or reduction in sentence is dated January 21, 2020, which is more than 30 days after the date of Miland's request. Because the BOP denied Miland's request outside of 30 days permitted by 18 U.S.C. § 3582(c)(1)(A), Miland's motion is properly before the Court.

## II.	Extraordinary and Compelling Reasons

The Sentencing Commission provides that an inmate's medical conditions can, without more, prove sufficiently extraordinary and compelling to justify a sentence modification. *See* U.S.S.G. § 1B1.13 cmt. 1(A) (providing that extraordinary and compelling reasons may exist if the defendant's medical conditions are "serious and advanced . . . with an end of life trajectory" or serious enough that they "substantially diminish[ ] the ability of the inmate to provide self-care" within the facility and "from which he or she is not expected to recover"). An inmate's serious medical condition "in combination with" additional reasons also may justify a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. 1(D). Courts that have considered compassionate-release motions in the context of the COVID-19 pandemic have required an inmate to demonstrate both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL

1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *accord United States v. Ramirez*, No. 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020); *United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Here, Miland has presented no evidence that his medical conditions "substantially diminish[ ] [his] ability. . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. 1(A). Instead, Miland claims that his degenerating health is "chronic" and that he has a "complex history of extensive serious medical needs." Miland offers no argument or evidence that his medical conditions prevent him from caring for himself while at FPC Duluth. Nor does Miland assert that he currently receives medically necessary treatment. Contrary to Miland's position, the warden of FPC Duluth described Miland's health conditions as "well controlled." Without evidence of Miland's inability to provide self-care and receive the treatment he needs in confinement, Miland's contentions are mere speculation which the Court need not consider. *United States v. Fry*, No. 11-cr-141(4) (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19cr54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Raia*, 954 F.3d 594, 957 (3d Cir. 2020) (stating that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

Nor has Miland demonstrated that he is particularly susceptible to COVID-19 or that he is at a particularized risk of contracting COVID-19 at his prison facility. Miland argues that he is at a higher risk of contraacting COVID-19 because of his health conditions and his status as an inmate. Miland, however, offers no current documentation or medical records to support these contentions. *See Shamilov*, 2020 WL 2029600, at *2–*3 (denying motion for compassionate release in which inmate provided no documentation of ongoing health conditions); *United States v. Black*, No. 5:18-cr-646-1, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (denying motion for compassionate release, in part, because inmate offered no medical records substantiating his claim of treatment for high blood pressure and diabetes); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (finding that an inmate failed to establish he is at a higher risk of contracting COVID-19 because he offered no medical records substantiating his asthma and respiratory issues). The Court, therefore, is unable to find that Miland is particularly susceptible to COVID-19 as a result of his health conditions.

Even assuming the severity of his underlying health conditions, Miland has failed to demonstrate a particularized risk of contracting COVID-19 at FPC Duluth. Miland makes no contention, and officers no evidence, that the FPC Duluth facility is home to any diagnosed cases of COVID-19. Miland asserts that the BOP has deliberately undercounted the number of infected individuals at its facilities. To date, however, no cases of COVID-19 have been reported by the FPC Duluth facility. *See* BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed June 15,

2020). Miland also asserts that the FPC Duluth facility has failed to take the necessary steps to prevent the spread of the virus. The facility, however, has taken numerous measures to prevent an outbreak within the facility. Those measures include: (1) suspending all social and volunteer visits; (2) restricting legal visits (with case-by-case exceptions); (3) suspending inmate facility transfers with certain limited exceptions; (4) requiring enhanced staff health screening, including temperature checks; (5) implementing a variety of coronavirus-specific protocols for inmates, such as screening new inmates, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. *See* BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed June 15, 2020). Additionally, there is no indication that FPC Duluth would be unable to handle an outbreak at this time or otherwise accommodate Miland's specific health concerns should he contract the virus.

For these reasons, the Court concludes that Miland fails to present extraordinary and compelling reasons for his release and that no other compelling circumstances support Miland's request. Because no extraordinary and compelling reasons support Miland's release, the Court does not address the Section 3553(a) factors or whether Miland is a danger to the safety of any other person or to the community. Accordingly, Miland's motion is denied.

**ORDER**

Based on the foregoing analysis and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Randy Scott Miland's emergency motion for sentence reduction, (Dkt. 76), is **DENIED**.

Dated:  June 16, 2020                                s/Wilhelmina M. Wright
                                                                                  Wilhelmina M. Wright
                                                                                  United States District Judge